# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **CRIMINAL NO. H-18-101** |
| | § | |
| **v.** | § | |
| | § | |
| **DERRICK ISAIAH STEWART,** | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Richard D. Hanes and Heather Rae Winter, Assistant United States Attorneys, and the defendant, Derrick Isaiah Stewart ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.  Defendant agrees to plead guilty to Counts Five, Six and Seven of the Indictment. Counts Five and Seven charge Defendant with Aiding and Abetting Interference with Commerce by Robbery, in violation of Title 18, United States Code, Sections 1951(a) and 2. Count Six charges Defendant with Aiding and Abetting Carry, Use and Brandishing of a Firearm in Furtherance of a Crime of Violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2.  The **statutory** maximum penalty for each violation of Title 18, United States Code, Sections 1951(a) and 2, is imprisonment of not more than 20 years and a fine of not more than

$250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2). The **statutory** penalty for each violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2, is imprisonment of not less than 7 years, to be served consecutive to any sentence pursuant to Counts Five and Seven, and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 5 years. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Waiver of Appeal and Collateral Review

4. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right

2

to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.  Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255.  In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

5.  In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.  Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court.  The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court.  *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

6. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

3

### The United States' Agreements

7. The United States agrees to each of the following:

(a)    If Defendant pleads guilty to Counts Five, Six and Seven of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing; and

(b)    If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### United States' Non-Waiver of Appeal

8. The United States reserves the right to carry out its responsibilities under guidelines

sentencing.  Specifically, the United States reserves the right:

(a)    to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)    to set forth or dispute sentencing factors or facts material to sentencing;

(c)    to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)    to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)    to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

9. Defendant is aware that the sentence will be imposed after consideration of the United

States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the

provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

10. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a)     If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree;

(b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

5

### Factual Basis for Guilty Plea

11.  Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts Five, Six and Seven of the Indictment.  If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt.  The following facts, among others, would be offered to establish Defendant's guilt:

On October 25, 2017, at approximately 6:24pm, HPD was dispatched to a hold up alarm at Cash America Pawn, a Federal Firearms Licensee, located at 8223 N. Frwy in Houston, Texas. Officers learned that four suspects robbed the store at gunpoint.  The first suspect—a tall black male, wearing gloves, white shirt and red shoes—walked in, raised a handgun in the air, and yelled, "Everybody get down."  The suspect approached an employee behind the front counter, pointed the gun at him and ordered him to open the register.  The employee did not have the keys to the register, so the suspect continued to yell at him.  Suspect #2—a shorter black male, wearing all black and pants with white decorations and gloves—jumped the counter and took an airsoft gun off of the wall.  Suspect #3—a Hispanic male with black puffy coat and red shoes, carrying a blue bag—jumped on top of the counter, pointed a gun at the employee, and yelled for him to get on the ground.  Suspects #3 and #4 went to the jewelry counter and began smashing the glass and stealing jewelry.  An audit of the Cash America Pawn revealed that approximately $12,021 in merchandise (primarily jewelry) had been stolen.

On October 31, 2017, at approximately 5:38pm, three suspects, later identified as Derrick Stewart, Patrick Cooper, and Joe Gutierrez, entered Cash America Pawn, a Federal Firearms licensee, located at 1816 N. Durham, in Houston, Texas and robbed the store using a large knife. Suspect #1—a Hispanic male, wearing red shoes, black coat, and black cloth over his face—carried

6

a knife and ordered the manager to unlock the jewelry cases behind the counter.  Suspect #1 stole the jewelry, then took money from the cash register.  Suspect #2—a black male, wearing white shoes, fatigue pants, white shirt and white cloth over his face, entered next.  Suspect #3—a black male, wearing white shoes, red hoodie, and bandana over his face—entered last, yelling for everyone to get down on the ground.  He took an employee's keys and tried to unlock the gun case, but was unsuccessful.  He then kicked the glass, shattering the gun case.  Suspects #2 and #3 proceeded to steal the firearms.  The three suspects then fled the business.  The suspects stole 10 firearms, jewelry, and U.S. currency, for a total loss of approximately $4,112.

Deputy McKinney with the Precinct One Constable's Office was flagged down by a witness after the robbery.  The witness told the officer that he saw three suspects running out of the Cash America at 19th and Durham and described the suspect vehicle as a green 2000 Jaguar, XJ6, bearing TX license plate JGB-0638.  Deputy McKinney located and attempted to conduct a traffic stop on the vehicle.  The vehicle did not stop until it reached the 700 block of 19th Street, where three suspects jumped out and ran on foot.  Responding officers were able to locate and take all three suspects into custody.

Following the suspects' apprehension, officers performed a show up procedure in order to see if the complainants could identify the suspects.  The store manager positively identified Gutierrez.  An employee identified Gutierrez, and another employee identified Cooper and Stewart.

Inside of the suspect vehicle, officers found 9 firearms and jewelry, which was determined to have been stolen from Cash America Pawn.  They also found the knife that was used to rob

Cash America Pawn, and a white bandana, white pants and gray glove. A tenth firearm was found on the ground between the vehicle and Cash American Pawn.

After waiving his Miranda rights, Derrick Stewart confessed to his role in the Cash America Pawn robbery on October 31, 2017. Stewart said he committed the robbery because he needed the money. He claimed he had purchased the green Jaguar on Facebook a few weeks before the robbery. He said no one really planned the robbery. They just drove by and decided to rob it. He also said that he keeps some of the firearms from robberies for protection. He also admitted to participating in the robbery of the Cash America Pawn on October 25, 2017 on the North Freeway. He stated they got an airsoft pistol and jewelry. He carried a gun during the robbery and received $650 for his part in that robbery.

At all times pertinent to the activity described above, both Cash America Pawn stores were engaged in the sale of consumer goods for United States currency, both of which traveled in and affected interstate commerce.

### Breach of Plea Agreement

12. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

8

**Restitution, Forfeiture, and Fines – Generally**

13.  This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

14.  Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

15.  Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

16.  Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

9

### Restitution

17.  Defendant agrees to pay full restitution to the victims regardless of the counts of conviction.  Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victims.  Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.  Subject to the provisions of this agreement, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Fines

18.  Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any.  Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.  Subject to the provisions of this agreement, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

19.  This written plea agreement, consisting of 12 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.  No promises or representations have been made by the United States except as set forth in writing in this plea agreement.  Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

20.  Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _____*May  21*_____, 2018.

*perrick Stewart*
Defendant

Subscribed and sworn to before me on _____*May 21*_____, 2018.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

RYAN K. PATRICK
United States Attorney

By: _____          *Danielle Touart*
HEATHER WINTER                                         Danielle Touart
Assistant United States Attorney                    Attorney for Defendant
Southern District of Texas

11

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO. H-18-101 |
| | § | |
| v. | § | |
| | § | |
| DERRICK ISAIAH STEWART, | § | |
| Defendant. | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_Danielle Jouvant_                 _5/21/18_
Attorney for Defendant                 Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_Derrick Stewart_                 _5/21/18_
Defendant                 Date

12